UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

|  |  |  |
|---|---|---|
| BASHIR TOLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-302 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| JBS PLAINWELL, INC., et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

This is a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* This matter is before the Court on plaintiffs' motion for attorneys' fees and costs. (Dkt. 261). The parties reached settlement regarding the underlying claims, but reserved the issue of reasonable attorneys' fees and costs to the Court. The parties stipulate that plaintiffs' were a prevailing party for the purposes of the pending motion. The motion was referred to the undersigned by the Honorable Paul L. Maloney for report and recommendation.

Plaintiffs seek a total of $572,666.63 in fees and $42,721.87 in costs. Defendants object to the amount of fees and costs being sought. Defendants argue generally that the proposed hourly rates and the hours worked are unreasonable, and that the claimed costs are excessive and, in some instances, unsubstantiated. Defendants also contend that the lodestar should be further reduced to reflect plaintiffs' limited success.

I conducted a hearing on the petition. Having considered the record, as well as the parties' oral and written submissions, I conclude that plaintiffs' fee request is excessive, both as to the hourly rates claimed and the number of hours expended. I also find that some of the claimed costs are unrecoverable. Accordingly, I recommend that the fee petition be granted, but in a substantially-reduced amount.

It should be noted at the outset that plaintiffs' counsel have failed to heed Judge Maloney's previous admonition to substantiate the reasonableness of their hourly rates and their time expenditures. On May 15, 2013, plaintiffs' counsel filed a fee petition seeking approximately $140,000 following the acceptance of offers of judgment by seven of the opt-in plaintiffs. (Dkt. 161). At that time, they sought a blended hourly rate of $349.83 for Mr. Turner, and hourly rates of $295 and $200 for Mr. Jason Young and Mr. Cascante, respectively. (Dkt. 161-1, Page ID 1671, 1676).[1] In an order denying the petition as premature, Judge Maloney noted that the hourly rates "appear to be exorbitant," and that counsel had "fail[ed] to show how their claimed hours . . . were 'reasonably expended' on the recovery of these seven plaintiffs, who recovered via settlement rather than any substantive ruling by this court." (Dkt. 168, Page ID 1765) (emphasis in original).

The instant petition shows no improvement, as the supporting affidavits are virtually identical to those submitted with the previous petition; and in some respects,

---

[1]The billing records indicate that Mr. Turner's hourly rate (timekeeper 195) was $300 from July 28, 2011, his first billing entry, until June 12, 2012; the hourly rate jumped to $425 two days later, on June 14, 2012. (Dkt. 161-1, Page ID 1661, 1667).

the opposite is true.  Counsel now seek significantly higher hourly rates (e.g., $515 for Mr. Turner and $300 for Mr. Cascante).  More troubling is that they are seeking the higher rate for Mr. Turner for work he performed throughout the four-year litigation, including the time period covered by the previous petition.  (*Compare* Dkt. 264, Page ID 4213 (seeking an hourly rate of $515 for work Mr. Turner performed in March 2011) *with* Dkt. 161-1, Page ID 1661 (noting an hourly rate of $300 for work Mr. Turner performed in July 2011)).[2]  That counsel now seek retroactively higher rates for the same period of time covered by the previous fee petition, after having been admonished by the Court regarding the apparent exorbitance of the earlier rates, is utterly inexplicable.

## Background

This litigation began on March 25, 2011, when Federico Gomez Luca filed a complaint seeking to bring a collective action under the FLSA.  (Dkt. 1).  The allegations centered on defendants' "donning and doffing" policies at their meat-processing facility, the central issue being whether the employees were being adequately compensated for the time it took them to put on ("don") and take off ("doff") certain protective equipment.  (*Id.*).

The Court issued an order on January 23, 2012, conditionally certifying this case as a collective action.  (Dkt. 47).  Nearly 200 current and former employees opted in.

---

[2]There are discrepancies in the billing records.  For example, plaintiffs now seek to recover for 17.7 hours of work Mr. Turner performed from March 23 to June 28, 2011.  (Dkt. 264, Page ID 4213).  But the May 15, 2013, fee petition billing records show no entry for Mr. Turner prior to July 28, 2011.  (Dkt. 161-1, Page ID 1661).

On March 8, 2012, the Court dismissed plaintiff Lucas from this case, finding that his and certain other putative plaintiffs' claims were precluded by a previous settlement in *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95 (W.D. Mich.). (Dkt. 63). The Court allowed plaintiffs' counsel to substitute the named plaintiff with one whose claims were not precluded by the *Bessey* settlement. (Dkt. 63, Page ID 389). On April 29, 2013, the Court substituted Bashir Toliver for Frederico Gomez Lucas as the named plaintiff, pursuant to the parties' stipulation. (Dkt. 156).

The number of opt-in plaintiffs diminished during the course of the litigation; some as a result of the *Bessey* claim preclusion, and some due to their failure to comply with the Court's orders compelling discovery. Seven of the plaintiffs accepted offers of judgment, totaling $1,032.50 (Dkt. 159), further reducing the total number of opt-in plaintiffs. The remaining 43 opt-in plaintiffs were covered by a settlement agreement reached during a March 17, 2015, settlement conference.[3] (Minutes, Dkt. 258). Each of these plaintiffs will receive a proportional share of the $50,000 settlement fund. (Order Approving Settlement Agreement, Dkt. 267).

The discovery included fifteen depositions; a number of interrogatories, document requests, and requests for admission for 66 opt-in plaintiffs; and two inspections of defendants' meat-cutting facility. (*See* Plaintiffs' Brief in Support of

---

[3]There were 53 opt-in plaintiffs at the time of the settlement conference. Ten were dismissed, however, after it was learned that their claims fell outside the statutory period. (*See* Defendants' Response to Plaintiffs' Motion for Attorneys' Fees and Costs (Defs' Br.) at 1, n. 2, Dkt. 265, Page ID 4277; *see also* Joint Motion for Approval of Settlement Agreement, Dkt. 259, Page ID 3937 (noting that the collective settlement agreement covers 43 plaintiffs)).

Motion for Attorneys' Fees and Costs (Pltfs' Br.) at 1-2, Dkt. 262, Page ID 3963-64). While plaintiffs point to the 260-some docket entries in this case (see *id.* at 1, Page ID 3963), the scope of this case can be better understood by looking at the number and nature of the various motions filed prior to the settlement of this case:

1.  Defendants' motion to dismiss plaintiff Lucas's claims as precluded by the *Bessey* settlement (Dkt11), which was granted (Dkt. 63);

2.  Plaintiff Lucas's motion to conditionally certify collective action (Dkt. 21) which was granted (Dkt. 47 (noting defendants did not contest certification itself));

3.  Plaintiff Lucas's motion for reconsideration of dismissal (Dkt. 70), which was denied (Dkt. 154);

4.  Plaintiff Lucas's motion for sanctions regarding defendants' production of allegedly illegible lists of employees and for an extension of the opt-in deadline, the former of which was denied and the latter granted (Dkt. 96);

5.  Defendants' motion for a protective order regarding a Rule 30(b)(6) deposition, which was dismissed as moot (Dkt. 94 (the Court noted that "counsel must work more cooperatively in discovery");

6.  Defendants' motion for partial summary judgment, which was denied (Dkt. 169);

7.  Defendants' motion to exclude certain opt-in plaintiffs under the *Bessey* settlement claim preclusion (Dkt. 120), which resulted in the dismissal of an additional seventeen opt-in plaintiffs (Dkt. 166);

8.  Defendants' motion for a protective order regarding a Rule 30(b)(6) deposition (Dkt. 129) and plaintiffs' motion to compel (Dkt. 138), the former of which was denied and the latter granted (Dkt. 140);

9.  Plaintiffs' motion to amend responses to requests for admission (Dkt. 131), which was granted in part and denied in part (Dkt. 142);

10.     Parties' stipulated motion to compel discovery against 86 opt-in plaintiffs (Dkt. 146, 148), which was granted (Dkt. 149);

11.     Defendants' motion to dismiss 91 opt-in plaintiffs for failure to respond to discovery requests (Dkt. 150), which was granted in part and denied in part (Dkt. 155 (dismissing 90 opt-in plaintiffs));

12.     Plaintiffs' motion for attorneys' fees and costs relating to the acceptance of offers of judgment by seven opt-in plaintiffs (Dkt. 161), which was denied without prejudice (Dkt. 168);

13.     Defendants' motion to dismiss four opt-in plaintiffs for failure to respond to discovery requests (Dkt. 176), which was denied as moot (Dkt. 179);

14.     Defendants' motion to de-certify the collective action (Dkt. 177), which was dismissed without prejudice as premature (Dkt. 202);

15.     Plaintiffs' motion to strike defendants' time studies (Dkt. 184), which was granted (Dkt. 195);

16.     Plaintiffs' motion to extend time for responding to discovery requests (Dkt. 203), which was granted in part and denied in part (Dkt. 210);

17.     Defendants' motion seeking to compel substantive responses to requests for admission for 21 of the remaining 66 opt-in plaintiffs (Dkt. 211), which was dismissed as moot (Dkt. 223 (*see* Stipulation and Order extending deadline for providing these responses (Dkt. 222));

18.     Defendants' motion to dismiss fifteen opt-in plaintiffs for failure to respond to discovery (Dkt. 224), which was resolved by the parties' stipulation dismissing fourteen of the opt-in plaintiffs (Dkt. 235);

19.     Defendants' motion for partial summary judgment (Dkt. 226), which was pending at the time of settlement;

20.     Plaintiffs' motion for partial summary judgment (Dkt. 232), which was pending at the time of settlement; and

21.     Plaintiffs' motion for sanctions and to strike defendants' time studies (Dkt. 246), which was pending at the time of settlement.

### Discussion

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). While an award of fees and costs is mandatory to a prevailing party, the amount of the award is within the sound discretion of the court. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The purpose of the FLSA is to ensure access to the courts to rectify unlawful labor practices. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Assoc., Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). Accordingly, the fee award may exceed the amount of damages awarded to the plaintiff. *Fegley*, 19 F.3d at 1134-35.

The primary concern in evaluating a request for attorneys' fees "is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Id.* (internal quotation marks omitted) (alteration in original). The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Adcock-Ladd v. Sec'y of Treasury*, 227

F.3d 343, 349 (6th Cir. 2000); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[4]

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of a fee petition, both with respect to the hourly rates being sought and the time expended working the case:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415 (citing *Reed*, 179 F.3d 471-72, n.3).  Many of these factors may be subsumed within the initial calculation of hours reasonably expended and a reasonable hourly rate.  *Hensley*, 461 U.S. at 434 n.9.

## 1. The Reasonableness of the Hourly Rates Being Sought.

The Court typically begins the analysis of a fee petition by determining a reasonable hourly rate.  "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  There is a presumption in favor of the community market rates.  *See, e.g., Blum*, 465 U.S. at 895 ("'[R]easonable fees' . . . are

---

[4]The courts "rely on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute."  *Isabel*, 404 F.3d at 415.

to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd*, 227 F.3d at 350 ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the *'prevailing market rate in the relevant community.'*" (quoting *Blum*, 465 U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The so-called "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]'" *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

This case is pending before Judge Maloney, who sits in Kalamazoo, Michigan, and a number of hearings have been held before two different magistrate judges in Grand Rapids. Accordingly, the local market is West Michigan.

In order to determine the local market rate, courts should rely on a combination of its own expertise and judgment. *See Wells v. Corporate Accounts Receivable*, 683 F. Supp.2d 600, 602-03 (W.D. Mich. 2010); *Garber v. Shiner Enterprises, Inc.*, No. 1:06-cv-646, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007). The court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence. *See Garber*, 2007 WL 4557857 at *1. Other relevant sources include the

attorney's actual billing rate and fee awards from prior cases. *See Payton v. New Century Mortgage Corp.*, No. 03 c 333, 03 c 703, 2004 WL 524693, at *2 (N.D. Ill. Mar. 11, 2004).

It is the plaintiffs' burden to prove the reasonableness of the requested rates. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

Plaintiffs' lead counsel are with the firm Sommers Schwartz, PC, which is located in Southfield, Michigan. They are seeking rates as follows:

1.     Matthew Turner, Senior Shareholder – $515.00;
2.     Jason Thompson, Senior Shareholder – $515.00;
3.     Lance Young, Senior Shareholder – $515.00;
4.     Jesse Young, Shareholder – $300.00;
5.     Neil Pioch, Associate – $300.00;[5]
6.     Amy Marino, Associate – $250.00; and
7.     Veronica Stewart, Paralegal – $135.00.

(Pltfs' Br. at 2, Page ID 3964).

Plaintiffs' only proffered evidence supporting these rates is found in affidavits from Sommers Schwartz attorneys Matthew Turner (Dkt. 264-1, Page ID 4261-64) and Neil Pioch (Dkt. 264-1, Page ID 4265-68), as well as an affidavit from paralegal

---

[5]Mr. Pioch joined the Sommers Schwartz firm during the pendency of the litigation. (Dkt. 272-5, Page ID 4457). He is listed as an "independent contractor" in the billing records prior to the time he joined the firm. (*Id.*, Page ID 4457-58).

Veronica Stewart.  (Dkt. 264-1, Page ID 4269-72).  These affidavits recount the education and experience of the respective affiant.  They provide nothing, however, to substantiate the reasonableness of the rates they seek; nor do they offer anything to suggest that these rates are in line with market rates in West Michigan for lawyers of similar ability and experience.  Each affiant simply makes essentially the same conclusory statement: "The hourly rates identified in the application reflect the knowledge, training and experience I have in FLSA cases, as well as other litigation matters."  (Dkt. 264-1, Page ID; *see also* Dkt. 264-1, Page ID 4262, 4266, 4270).  Plaintiffs have fallen well short of meeting their burden of proof regarding the rates to be used in calculating the fee award in this case.  *See Blum*, 465 U.S. at 896 n.11.[6]

Plaintiffs also seek compensation for attorneys and other individuals who work or worked at the Avanti Law Group, P.L.L.C. ("Avanti Group"), including attorney Mario Cascante, who is no longer with that firm.  (Dkt. 262-3; 262-4).  They seek hourly rates for Mr. Alvarez, a partner in the Avanti Group, of $350.00 and $400.00; they seek hourly rates for Mr. Cascante of $200.00, while he was an associate with the Avanti Group, and $300.00, after he left that firm to begin his own practice.  (Pltfs' Br. at 3,

---

[6]Plaintiffs' reliance on another magistrate judge's decision to award a $450.00 hourly rate to an attorney (Pltfs' Br. at 6, Page ID 3968) is misplaced.  The magistrate judge noted in that decision that plaintiffs did not object to the $475.00 hourly rate sought by defendant's counsel.  *See Duran v. Sara Lee*, Case No. 1:11-cv-313, Dkt. 249 at Page ID 8314 (W.D. Mich. Mar. 5, 2014).  Even so, the magistrate judge reduced the rate to $450.00, noting that this rate was within the State Bar of Michigan's 2011 Economics of Law Practice Survey's 95th percentile of attorneys defending employment litigation.  (*Id.*, Page ID 8314-15).  The uncontested rate permitted in that case is an outlier.

Page ID 3965).  Plaintiffs also seek fees for other, unspecified attorneys at hourly rates between $100.00 and $350.00, along with unspecified paralegals at hourly rates of $30.00 and $100.00.  The only affidavits submitted in support of the Avanti Group fees are those of Anthony Alvarez (Dkt. 264-1, Page ID 4273-74) and Mario Cascante.  (Dkt. 264-1, Page ID 4275-76).  These affidavits suffer from the same deficiencies as those filed on behalf of Sommers Schwartz.  They fail to provide any information regarding the reasonableness of the rates they seek.  Mr. Cascante's affidavit contains a conclusory statement similar to those offered by the Sommers Schwartz attorneys: "My hourly rates identified in this petition reflect the knowledge, training, and experience I have in FLSA cases."  (Dkt. 264-1, Page ID 4276).  Mr. Alvarez's affidavit fails to do even that.  (*See* Dkt. 264-1, Page ID 4273-74).

More troubling still are plaintiffs' effort to recover fees on behalf of a number of individuals in the Avanti Group, seeking hourly rates that range between $30 and $350, for whom they have failed to provide even a job title or function.  (*See* Defs' Br. at 4 n.6, Page ID 4280 (citing Dkt. 262-3) (listing the names of these twelve individuals)).  Much less do they offer the Court anything upon which to make a reasonableness assessment as to the rates being charged or the work performed – the only reference to these individuals in the plaintiffs' brief is to "other attorneys" for whom they seek hourly rates "between $100.00 and $350.00," and "paralegal time at either $30.00 an hour or $100.00 an hour."  (Pltfs' Br. at 3, Page ID 3965).  Accordingly, any time billed by these unspecified attorneys and paralegals is being excluded entirely.

Defendants, having objected to all the rates being sought by plaintiffs' counsel, ask the Court to consider the 2014 edition of the State Bar of Michigan's Economics of Law Practice in Michigan ("Bar Survey"), which includes reported billing rates throughout Michigan. (Defs' Br. at 4-5, Dkt. 265, Page ID 4280-81 (providing a copy of the Bar Survey at Dkt. 265-1)). This is an acceptable source. *See Wells*, 683 F. Supp.2d at 603; *see also O'Connor v. Trans Union, LLC*, No. 05-cv-74498, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008)) ("District courts have relied on the [Bar Survey] . . . to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice.") (citing *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 Fed. App'x 498, 501-02 (6th Cir. 2006)).

According to the survey, the "mean" hourly rate for plaintiff attorneys who practice in the area of employment law – the subject matter most closely analogous to an FLSA case – is approximately $275.00. (Dkt. 265-1, Page ID 4296).[7] In my judgment, this is a reasonable rate for use as a blended rate for plaintiffs' attorneys.[8] I will use $75.00 as the hourly rate for the paralegal. *See Durtche v. Commissioner*,

_____

[7]Plaintiff's counsel note that the 2014 Bar Survey is based on information collected in 2013, and they argue that its rates "should be adjusted for inflation and for the post-recession recovery the profession is now experiencing." (Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Attorneys' Fees and Costs (Pltfs' Reply) at 2, Dkt. 272-1, Page ID 4441). Counsel offer no evidentiary support for this assertion; nor do they provide any basis for assessing the rate of the purported inflation. *See Blum*, 465 U.S. at 896 n.11 (burden is on the fee applicant). Their argument also ignores the fact that much of their work was performed in the time period between 2011 and 2013.

[8]I am using a blended rate due to the fact that I am recommending an across-the-board reduction to the fee petition, as opposed to a line-by-line assessment.

No. 1:12-cv-1181, 2015 WL 1211183, *1 (W.D. Mich. March 17, 2015) (in social security case, paralegal was reimbursed at the rate of $75.00); *Mathis v. Commissioner*, No. 1:13-cv-256, 2014 WL 4187368, *3 (W.D. Mich. Aug. 21, 2014) (reducing paralegal hourly rate in social security case from $100.00 to $75.00); *Mercado v. Commissioner*, No. 1:10-cv-1061, 2013 WL 6512949, *5 (W.D. Mich. Dec. 12, 2013) (same); *but see Todd Friedrich v. Hunter Warfield, Inc.*, No. 1:12-cv-460, 2013 WL 4766188, *3 (W.D. Mich. Sept. 4, 2013) (reducing a requested paralegal hourly rate from $160.00 to $100.00 in Fair Debt Collection Practices Act).

## 2.      The Reasonableness of the Claimed Time Expended.

Discrepancies in the billing records make it virtually impossible to determine with complete accuracy the number of attorney hours for which plaintiffs seek reimbursement.  The parties add the numbers somewhat differently.  By plaintiffs' count, there are a total of 1551.40 attorney hours (*see* Pltfs' Br. at 2-3, Page ID 3964-65);[9] by defendants' count the total equals 1570.87 hours.  (*See* Dkt. 265-2, Page ID 4304; Dkt. 265-3, Page ID 4373; Dkt. 265-4, Page ID 4398).  Giving plaintiffs the benefit of the doubt, I am using defendants' number, which is the larger of the two.

------

[9]The 1,551.4 figure is reached by adding the number of attorney hours enumerated in plaintiffs' brief at the cited pages.  This figure is somewhat inflated by the Avanti Group's decision to lump together attorney and non-attorney time.  (*See* Pltfs' Br. at 3, Page ID 3965).  Curiously, plaintiffs later state that their "attorneys spent a total of 1,910.10 hours prosecuting this litigation."  (*Id.* at 9, Page ID 3971). They cite to nothing in making this statement, and I have been unable to discern how they came to that figure.

Defendants' figure, like plaintiffs', includes time billed by Avanti Group employees that I have already determined should be excluded.  I compute the total non-excluded time as follows:

1.   Matthew Turner – 431.25 hours
2.   Jason Thompson – 29.75 hours
3.   Lance Young – 31.1 hours
4.   Jesse Young – 63.1 hours
5.   Neil Pioch – 401.4 hours
6.   Amy Marino – 28.4 hours
7.   Robert Alvarez – 25.25 hours
8.   Mario Cascante – 428.97 hours

The total attorney hours, excluding the "other" Avanti Group employees, is 1439.22. I must then add to this figure the hours plaintiffs seek for Sommers Schwartz's paralegal, Veronica Stewart, in the amount of 266.8 hours.  (Pltfs' Br. at 2, Dkt. 262, Page ID 3964).  This results in a total of 1,706.02 hours.

By any measure, these numbers indicate an excessive expenditure of time.  To be sure, some of the wasted time is the fault of defendants, whose discovery tactics resulted in a compulsion order (Dkt. 140), and a Rule 37(c)(1) sanction precluding their time studies.  (Dkt. 194, 195).

Plaintiffs, for their part, are responsible for a significant amount of unnecessary litigation.  It began with the original named plaintiff, Frederico Lucas, who was precluded from bringing the complaint in this case by virtue of the *Bessey* settlement agreement.  This resulted in expenditures of time addressing defendants' motion to dismiss (Dkt. 11), which was granted (Dkt. 63), and plaintiff Lucas's motion to reconsider that decision (Dkt. 70), which was denied.  (Dkt.154).  Other motion practice

was necessitated by other opt-in plaintiffs who joined the instant litigation, despite the fact that their claims were also precluded by the *Bessey* settlement. (*See* Dkt. 120, 160). This resulted in the dismissal of seventeen additional opt-in plaintiffs. (Dkt. 166). *See Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986) (Hours actually expended may nevertheless be found excessive if "the lawyer used poor judgment in spending too many hours on some part of the case.").

In addition, many opt-in plaintiffs failed to participate in discovery. No less than five motions were filed to address that problem, including some motions stipulated by both parties. (*See* Dkt. 146, 150, 176, 211, 224). All but one of these motions were successful, ultimately resulting in the dismissal of 104 opt-in plaintiffs (Dkt. 155, 235), more than half of the original 200.

Moreover, this case was seriously over-lawyered on plaintiffs' side. At least thirteen attorneys have billed time to this case: six from the Sommers Schwartz firm; seven from the Avanti Group, including Mr. Cascante. (Dkt. 265-2, 265-3).[10] Exacerbating this problem is that it was top-heavy. For example, the three senior shareholders of the Sommers Schwartz firm account for more that fifty percent of the total hours claimed by that firm (492 out of 985 hours), each of whom is claiming an hourly rate of $515.00. (Dkt. 265-2). This despite the fact that the firm apparently employs competent associates who bill at half the rate. "Purchasers of legal services

---

[10]While plaintiffs note that many of the opt-in plaintiffs speak Spanish only, necessitating the use of Spanish-speaking counsel (Pltfs' Br. at 8, Dkt. 262, Page ID 3970), that does not justify the number of lawyers involved in this case.

generally require that work be performed by the person with the lowest billing rate who is competent to perform that service. This usually results in a greater expenditure of associate time, while partners perform only those tasks that they alone can do." *Fair Housing Center of S.W. Mich. v. Hunt*, No. 1:09-cv-593, 2013 WL 5719152, *15 (W.D. Mich. Oct. 21, 2013). "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fees request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434 (citations omitted). The party seeking an award of attorneys' fees has the burden of proving the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433; *see Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

Despite plaintiffs' claims to the contrary, this case was neither novel nor particularly difficult. *See Carlson v. Leprino Foods Co.*, No. 1:05-cv-798, 2009 WL 5697878, *7 (W.D. Mich. Sept. 2, 2009) (The Court noted, in that donning and doffing case, that it "[did] not find that the questions presented were particularly novel or difficult. This appears to have been a fairly straightforward FLSA/collective action."), *Report and Recommendation rejected, in part, on other grounds*, 2010 WL 299490 (W.D. Mich. Jan. 20, 2010). The precedence of the *Bessey* case, which involved the same donning and doffing issues as this case, likely made this litigation easier, not more difficult, as plaintiffs suggest. Moreover, these types of cases are not all that rare. A

-17-

Westlaw search, for example, reveals at least fifteen FLSA cases involving donning and doffing issues within the Sixth Circuit in the past ten years.[11]

The fundamental flaws in the fee petition – unnecessary litigation, excessive hours, overstaffing, and top-heavy structure – make it impractical for the Court to conduct a line-by-line review. These problems pervade the fee petition, and they represent fundamental errors in judgment concerning the prosecution of this case. In these circumstances, several circuits have endorsed the complete denial of the petition, particularly where, as here, the amount sought is grossly disproportionate. *See Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607-08 (7th Cir. 1982) (per curiam); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *Peter v. Jax*, 187 F.3d 829, 837-38 (8th Cir. 1999); *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 96-97 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir. 1991) (on rehearing).

While it would be well within this Court's discretion to deny the fee petition outright, I find that such action would be unduly harsh in this case. The Sixth Circuit has endorsed an alternative approach, however. Where, as here, reductions to the hours expended are plainly appropriate and the fee documentation is voluminous, the Court may impose a simple percentage-based, across-the-board reduction instead of line-by-line reductions. *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x

---

[11]The Westlaw search was conducted in the directory for district courts within the Sixth Circuit using the search terms "FLSA", "donning," and "doffing" in the same paragraph. I have eliminated from this count multiple results for the same case, as well as results involving this case.

226, 228 (6th Cir. 2005); *see also Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997) (applying across-the-board reduction), *overruled on other grounds by Pollard v. E.I. DuPont de Nemours & Co.*, 532 U.S. 843 (2001); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (Where fee documentation is voluminous, an "hour-by-hour review is simply impractical and a waste of judicial resources."); *Coulter*, 805 F.2d at 150-51 (The trial court did not abuse its discretion in reducing compensable pretrial preparation hours by a full fifty percent.). This approach seems fair and workable, but the percentage reduction must not be arbitrary.

Defendants propose that plaintiffs be given a fee award based on 758.95 attorney hours, subject to their assertion that the overall fee award should be further reduced to reflect plaintiffs' limited success.[12]   Among defendants' objections to the total attorney hours are the 343.3 hours attributable to the independent contracting attorney.[13]   (*See* Dkt. 265-2, Page ID 4304).   Their objection to the independent contractor's hours is limited to their assertion that plaintiffs failed to provide any information about this attorney. (Defs' Br. at 3-4, Page ID 4279-80). Plaintiffs have

---

[12]This figure is arrived at by taking defendants' spreadsheet totals (642.55 for Sommers Schwartz; 210.45 for the Avanti Group; and 79.30 for Mr. Cascante) then subtracting out the 173.35 paralegal hours attributable to Ms. Stewart to which defendants made no objection. (*See* Dkt. 265-2, Page ID 4304, 4370; Dkt. 265-3, Page ID 4373, 4391; Dkt. 265-4, Page ID 4398, 4406; Defs' Br. at 9-10, Dkt. 265, Page ID 4285-86). There is a discrepancy between defendants' chart regarding the proposed attorney hours for the Avanti Group (182.5 hours) and defendants' spreadsheet total for the Avanti Group (210.45). (*Compare* Dkt. 265-3, Page ID 4373 and Page ID 4391). I am giving plaintiffs the benefit of the higher of the two conflicting figures.

[13]I have added the 27.9 hours for Independent Contracting Attorney 1 to the 315.4 hours for Independent Contracting Attorney 2. (*See* Dkt. 264, Page ID 4258-59).

identified Neil Pioch as the attorney who was billing under the designations Independent Contracting Attorney 1 and 2 (*See* Dkt. 272-5, Page ID 4457), and they have provided the same level of information for him as for the other attorneys listed above – information I find wanting, but sufficient to justify an award at the reduced $275.00 hourly rate.   Accordingly, I am adding the 343.3 hours to the 758.95 unobjected-to hours, with a new total of 1102.25 hours (keeping in mind defendants' contention that any fee award based on these hours should be reduced to reflect limited success).

Defendants raise a number of other, individualized objections to various billing entries.   These include duplicative billing, billing attorney time for what could have been done by clerical staff, vague billing entries, and "block" billing (including multiple, unrelated tasks in one entry).   (Dkt. 265-2, 265-3, 265-4).   While I would not sustain every individualized objection to the various time entries, were I to approach this fee petition using a line-by-line analysis, the majority are well taken.

Given that I have determined that an across-the-board reduction is appropriate in this case, I must calculate a rational basis for the reduction.   Defendants' objections, if sustained in total (adding back in the independent contractor hours), would result in a reduction in awardable hours of approximately 25 percent (1439.22/1102.25 = 76.58%).   This is a reasonable overall reduction, given the facts and circumstances of this case.

Accordingly, I find that the revised total of 1102 attorney hours (rounded) should be reduced by 25 percent to remediate the problems outline above.   This reduces the

total of awardable attorney hours to 827 (rounded). Likewise, the total number of hours billed by paralegal Veronica Stewart – 266.8 hours – should be reduced by 25 percent, to 200 hours (rounded). Applying the revised hourly rates results in a lodestar amount of $242,425.00 (827 x $275.00 and 200 x $75.00).

This leaves the issue of whether the lodestar should be further reduced to reflect plaintiffs' limited success. Defendants argue that such a reduction is appropriate, noting that the fifty plaintiffs who have received some monetary settlement award in this case represent one percent of the putative class and 25 percent of the original 200 opt-in plaintiffs. (Defs' Br. at 9-10, Page ID 4285-86). They ask for a fifty-percent reduction in the lodestar amount. (*id.* at 10, Page ID 4286). Plaintiffs respond that they achieved "an excellent result" for the fifty plaintiffs who have received monetary settlements, and any comparison to the original size of the putative class is meaningless. (Pltfs' Reply at 6, Dkt. 272-1, Page ID 4445).

Plaintiffs are correct, to a point. The original size of the putative class should not be used to define plaintiffs' success here, and as to the fifty successful plaintiffs, the awards are substantial by FLSA standards. But plaintiffs' argument ignores the fact that eighteen of the opt-in plaintiffs were involuntarily dismissed from this case, including the original named plaintiff, due to the *Bessey* claim preclusion.

Moreover, many of the opt-in plaintiffs failed to participate in discovery. This ultimately led to the dismissal of 104 opt-in plaintiffs from the case (*see* Dkt. 155, 235), more than half of the original 200.

During oral argument, plaintiffs' counsel argued that defendants should pay for all litigation costs, including those associated with the motions to dismiss opt-in plaintiffs, on the basis that these litigation problems were reasonably foreseeable to defendants at the time they allegedly violated the FLSA. I disagree. It was reasonably foreseeable to defendants that they would be held accountable to aggrieved employees for any violation of the FLSA. It was not reasonably foreseeable that they would pay litigation costs relating to plaintiffs who were either ineligible to participate, by virtue of a previous settlement, or were unwilling (or unable) to participate in discovery. Simple fairness dictates the same conclusion.

Accordingly, there is sufficient basis to reduce plaintiffs' lodestar. *See Hensley*, 461 U.S. at 440 ("Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."); *see also Carlson*, 2009 WL 5697878, at *8 (The court reduced the fee award for limited success on the basis that only 48 of the 84 opt-in FLSA plaintiffs recovered under the collective settlement.). The issue, then, is how much of a reduction. While a simple formula could be based on the number of successful plaintiffs in relation to the original number of opt-in plaintiffs (resulting in a 75% reduction), that would not be reasonable. Much of the litigation in this case would have transpired whether the number of collective plaintiffs was 200 or fifty. Likewise, defendants' request for a fifty-percent reduction is too great.

In *Carlson*, the court appears to have reduced the lodestar by about 38 percent to reflect the plaintiffs' limited success in that case. *See* 2009 WL 5697878, at *9. The

reduction in that case was achieved by cutting the attorneys' hourly rates.  *See id.* That reduction was also influenced by the magistrate judge's assessment that the attorneys had engaged in duplication of effort, *see id.* at *9, a factor I have already considered in my earlier reduction of the lodestar.

Accordingly, a 25-percent reduction of the lodestar in this case is reasonable to reflect plaintiffs' limited success.  This results in a revised lodestar of $181,818.75.

## 3.   Reasonable Costs

The FLSA allows the prevailing plaintiffs to recover "costs of the action," in addition to attorneys' fees.  *See* 29 U.S.C. § 216(b).  "The language of the statute contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring *any* expense for legal fees or *costs*.' "  *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir.1946) (emphasis supplied).  Section 216(b) of the FLSA has been interpreted to include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."  *Lopez v. Lawns 'R' Us*, Civ. No. DKC 07-2979, 2008 WL 2227353, *7 (D. Md. May 23, 2008) (citations omitted).

Plaintiffs' seek to recover $42,721.87 in total costs.  This includes $40,216.61 in costs from the Sommers Schwartz firm, $1,940.13 in costs from the Avanti Group, and $565.13 from Mr. Cascante.  (Dkt. 264, Page ID 4259; Dkt. 262-3, Page ID 4157; Dkt. 262-4, Page ID 4164).  Defendants do not object to $13,648.96 of the claimed costs.  (*See* Dkt. 265-2, Page ID 4371; Dkt. 265-3, Page ID 4396; Dkt. 265-4, Page ID 4408).

Defendants do object to the remaining costs being sought.[14]   They will be addressed in turn.

1.   Defendants object to plaintiffs claim for $1,202.00, which is listed under the description "Investigation," as "vague, self-inflicted, and unreasonable." (Dkt. 265-2, Page ID 4371).  Plaintiffs have explained that these costs were associated with locating class members who have moved.  (Stewart Sppl. Affidavit, Dkt. 277-6, Page ID 4614).  Giving plaintiffs the benefit of the doubt, this cost should be compensated.

2.   Defendants object to plaintiffs claim for $6,315.44, which is included under the heading "service fee," on the bases that the description is "vague" and the costs "self-inflicted" and "unreasonable."  (Dkt. 265-2, Page ID 4371).   Plaintiffs explain that this category included $3,804.61 for deposition court reporters, $1,710.83 for an expert who surveyed defendants' plant, and $800.00 for the mediator assigned to the case.  (Stewart Sppl. Affidavit, Dkt. 277-6, Page ID 4616).  These costs were reasonably incurred and should be reimbursed.

3.   Defendants object to plaintiffs' claim for $6,910.93, which is listed under the description "photocopy – outside service," on the basis that the description is "vague." (Dkt. 265-2, Page ID 4371).  Plaintiffs explain that this expense was incurred copying the class notice to 4,555 putative class members.  (Stewart

---

[14]The parties' briefs provide little analysis regarding the cost issues, and very little legal authority. (*See* Pltfs' Br. at 10, Page ID 3972; Defs' Br. at 10, Page ID 4286). Accordingly, the recommendations made herein regarding the various cost items should not have any general application beyond this case.

Sppl. Affidavit, Dkt. 277-6, Page ID 4614-15).  In hindsight, this expenditure is of questionable value, but that is not the standard for determining reasonableness.  Accordingly, it should be compensated.

4.      Defendants object to plaintiffs' claim for $6,182.15, which is listed under the description "professional services," on the basis that the description is "vague." (Dkt. 265-2, Page ID 4371).  Plaintiffs explain that $3,743.00 was paid to locate class members who had moved, and $2,439.15 was incurred to transcribe and translate documents for non-English-speaking class members.  (Stewart Sppl. Affidavit, Dkt. 277-6, Page ID 4615).  While plaintiffs do not explain why it was necessary to reinvestigate the location of class members two months after conducting the original investigation, I am giving them the benefit of the doubt. Both expenses should be reimbursed.

5.      Defendants object to plaintiffs' claim for $4,815.02, which is listed under the description "publications & on line med," on the basis that the description is "vague."  (Dkt. 265-2, Page ID 4371).  Plaintiffs explain that this expense was incurred for "on line media charges for the class notice."  (Stewart Sppl. Affidavit, Dkt. 277-6, Page ID 4615).  This expenditure should be compensated.

6.      Defendants objections to the various remaining costs claimed by the Sommers Schwartz law firm are well-founded.  These costs are described simply as "meals," "misc. court costs," "misc. litig. costs," "miscellaneous," "outstate travel," "telephone long distance," and "conference call," respectively. (Dkt. 265-

2, Page ID 4371). These descriptions are simply too cryptic to allow for a reasonableness analysis. Accordingly, these claimed expenses should be denied.

7.     Defendants object to 27 of the 63 listed expenses for which the Avanti Group seeks reimbursement. (Dkt. 265-3, Page ID 4392-96). The objections to the following numbered expense items should be sustained: 27, 43, 44, 48, 56, and 59. In addition to defendants' stated objections, there is insufficient justification for the expenditures for which plaintiffs seek reimbursement. This leaves $1,308.81 in Avanti Group expenses that should be reimbursed.

8.     Defendants object to fifteen of the nineteen listed expenses for which Mr. Cascante seeks reimbursement. (Dkt. 265-4, Page ID 4407-08). The objections to the "dinner" expenses should be sustained. This leaves $470.98 in expenses incurred by Mr. Cascante that should be reimbursed.

    The total expenses for which I recommend reimbursement is $40,854.29.

## Recommendation

    For the foregoing reasons, I recommend that the Court award plaintiffs $181,818.75 in fees and $40,854.29 in costs.

Dated: August 20, 2015         /s/ Phillip J. Green        

United States Magistrate Judge

## __NOTICE TO PARTIES__

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).