UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BASHIR TOLIVER,                          )
      Plaintiff,                    )
                           )
                           )     No. 1:11-cv-302
-v-                                      )
                           )     HONORABLE PAUL L. MALONEY
JBS PLAINWELL, INC.,                     )
SMITHFIELD BEEF GROUP-PLAINWELL, INC.,   )
PACKERLAND-PLAINWELL, INC.,              )
      Defendants.                   )
_____ )

## OPINION AND ORDER MODIFYING AND ADOPTING THE REPORT AND RECOMMENDATION CONCERNING ATTORNEY FEES AND COSTS

This matter is before the Court on Plaintiff Bashir Toliver's objections (ECF No. 289) to

the Magistrate Judge's Report and Recommendation (ECF No. 288) regarding attorney fees and

costs. The parties reached settlement regarding the underlying claims, but reserved the issue of

reasonable attorney fees and costs to the Court. The parties stipulated that plaintiff[1] was a

prevailing party for the purposes of this motion. (*See* ECF No. 288 at PageID.4658).

Plaintiff seeks a total of $572,666.63 in fees and $42,721.87 in costs. Defendants object

to the amount of fees and costs being sought. Defendants argue generally that the proposed

hourly rates and the hours worked are unreasonable, and that the claimed costs are excessive and,

in some instances, unsubstantiated. Defendants also contend that the lodestar should be further

reduced to reflect Plaintiff's limited success.

The Magistrate Judge conducted a hearing on the petition. Having considered the record,

as well as the parties' oral and written submissions, the Magistrate Judge concluded that

plaintiff's fee request was "excessive, both as to the hourly rates claimed and the number of

---

[1] One named representative of a class remains; thus, while the Court, to the extent possible, refers to a singular
"plaintiff," it obviously recognizes that plaintiff as the named representative of the class.

hours expended." (*Id.* at PageID.4659). Further, the Magistrate Judge noted "at the outset that plaintiffs' counsel . . . failed to heed [the Court's] previous admonition to substantiate the reasonableness of their hourly rates and their time expenditures." (*Id.*). "Accordingly, [the Magistrate Judge] recommend[ed] that the fee petition be granted, but in a substantially-reduced amount" of $181, 818.75 in fees and $40,854.29 in costs. (*Id.* at PageID.4659, 4683).

## I.    BACKGROUND

The Court adopts the following summary of the Report and Recommendation for purposes of this motion.[2]

This litigation began on March 25, 2011, when Federico Gomez Luca filed a complaint seeking to bring a collective action under the FLSA. (ECF No. 1). The allegations centered on defendants' "donning and doffing" policies at their meat- processing facility, the central issue being whether the employees were being adequately compensated for the time it took them to put on ("don") and take off ("doff") certain protective equipment.  (*Id.*).

The Court issued an order on January 23, 2012, conditionally certifying this case  as a collective action.  (ECF No. 47).  Nearly 200 current and former employees opted in. On March 8, 2012, the Court dismissed plaintiff Lucas from this case, finding that his  and certain other putative claims of non-named plaintiffs were precluded by a previous settlement  in *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95 (W.D. Mich.). (ECF No. 63). The Court allowed plaintiff's counsel to substitute the named plaintiff with one whose claims were not precluded by the *Bessey* settlement.  (ECF No.  63 at PageID.389).  On April 29, 2013, the Court substituted Bashir Toliver for Frederico Gomez Lucas as the named plaintiff, pursuant to the parties' stipulation.  (ECF No. 156).

---

[2] The only objections raised by Plaintiff concern whether the Magistrate Judge applied appropriate legal analysis in his reduction recommendations to the Court.

The number of opt-in plaintiffs diminished during the course of the litigation; some as a result of the *Bessey* claim preclusion, and some due to their failure to comply with the Court's orders compelling discovery. Seven of the plaintiffs accepted offers of judgment, totaling $1,032.50 (ECF No. 159), further reducing the total number of opt-in plaintiffs. The remaining 43 opt-in plaintiffs were covered by a settlement agreement reached during a March 17, 2015, settlement conference.[3] (*See* ECF No. 258). Each of these plaintiffs will receive a proportional share of the $50,000 settlement fund. (*See* ECF No. 267).

The discovery included fifteen depositions; a number of interrogatories, document requests, and requests for admission for 66 opt-in plaintiffs; and two inspections of defendants' meat-cutting facility. (*See* ECF No. 262 at PageID.3963–64). While plaintiff points to the 260-some docket entries in this case (*see id.* at Page ID. 3963), the scope of this case can be better understood by looking at the number and nature of the motions filed prior to settlement:

1. Defendants' motion to dismiss plaintiff Lucas's claims as precluded by the *Bessey* settlement (ECF No. 11), which was granted (ECF No. 63);

2. Plaintiff Lucas's motion to conditionally certify collective action (ECF No. 21) which was granted (ECF No. 47 (noting defendants did not contest certification itself));

3. Plaintiff Lucas's motion for reconsideration of dismissal (ECF No. 70), which was denied (ECF No. 154);

4. Plaintiff Lucas's motion for sanctions regarding defendants' production of allegedly illegible lists of employees and for an extension of the opt-in deadline, the former of which was denied and the latter granted (ECF No. 96);

5. Defendants' motion for a protective order regarding a Rule 30(b)(6) deposition, which was dismissed as moot (ECF No. 94 (the Court noted that "counsel must work more cooperatively in discovery"));

---

[3] There were 53 opt-in plaintiffs at the time of the settlement conference. Ten were dismissed, however, after it was learned that their claims fell outside the statutory period. (*See* ECF No. 265 at PageID.4277; *see also* ECF No. 259 at PageID.3937 (noting that the collective settlement agreement covers 43 plaintiffs)).

6.     Defendants' motion for partial summary judgment, which was denied (ECF No. 169);

7.     Defendants' motion to exclude certain opt-in plaintiffs under the *Bessey* settlement claim preclusion (ECF No. 120), which resulted in the dismissal of an additional seventeen opt-in plaintiffs (ECF No. 166);

8.     Defendants' motion for a protective order regarding a Rule 30(b)(6) deposition (ECF No. 129) and plaintiff's motion to compel (ECF No. 138), the former of which was denied and the latter granted (ECF No. 140);

9.     Plaintiff's motion to amend responses to requests for admission (ECF No. 131), which was granted in part and denied in part (ECF No. 142);

10.     Parties' stipulated motion to compel discovery against 86 opt-in plaintiffs (ECF Nos. 146), which was granted (ECF No. 149);

11.     Defendants' motion to dismiss 91 opt-in plaintiffs for failure to respond to discovery requests (ECF No. 150), which was granted in part and denied in part (ECF No. 155 (dismissing 90 opt-in plaintiffs));

12.     Plaintiff's motion for attorneys' fees and costs relating to the acceptance of offers of judgment by seven opt-in plaintiffs (ECF No. 161), which was denied without prejudice (ECF No. 168);

13.     Defendants' motion to dismiss four opt-in plaintiffs for failure to respond to discovery requests (ECF No. 176), which was denied as moot (ECF No. 179);

14.     Defendants' motion to de-certify the collective action (ECF No. 177), which was dismissed without prejudice as premature (ECF No. 202);

15.     Plaintiff's motion to strike defendants' time studies (ECF No. 184), which was granted (ECF No. 195);

16.     Plaintiff's motion to extend time for responding to discovery requests (ECF No. 203), which was granted in part and denied in part (ECF No. 210);

17.     Defendants' motion seeking to compel substantive responses to requests for admission for 21 of the remaining 66 opt-in plaintiffs (Dkt. 211), which was dismissed as moot (ECF No. 223 (*see* Stipulation and Order extending deadline for providing these responses (ECF No. 222));

18.     Defendants' motion to dismiss fifteen opt-in plaintiffs for failure to respond to discovery (ECF No. 224), which was resolved by the parties' stipulation dismissing fourteen of the opt-in plaintiffs (ECF No. 235);

19.     Defendants' motion for partial summary judgment (ECF No. 226), which was pending at the time of settlement;

20.     Plaintiff's motion for partial summary judgment (ECF No. 232), which was pending at the time of settlement; and

21.     Plaintiff's motion for sanctions and to strike defendants' time studies (ECF No. 246), which was pending at the time of settlement.

## II.     PROCEDURAL HISTORY

The procedural history leading up to the resolution of the underlying motion is an exclamation point on the contentious nature of this multi-year litigation. After over four years of litigation, both parties filed a joint motion for settlement on April 8, 2015, which was granted on May 13, 2015. (ECF No. 267.) Plaintiff then filed a motion for attorney fees and costs (ECF No. 261); Defendants filed a response (ECF No. 265). Thereafter, on May 28, 2015, the Court referred the motion for attorney fees and costs consistent with 28 U.S.C. § 636(b)(1)(A).[4] *See* Fed. R. Civ. P. 54(D) ("[T]he court may . . . refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.").

---

[4] The Court recognizes that it should have technically made the referral under § 636(b)(3):

The district court should have made the referral under § 636(b)(3), which is broad enough to encompass post-judgment motions. *See, e.g., Callier v. Gray*, 167 F.3d 977, 983 (6th Cir. 1999) (upholding a district court's referral for determination of damages to a magistrate judge under § 636(b)(3)). However, this technical or clerical error in the district court's order resulted in no substantive prejudice. For although the district court inadvertently cited the wrong subsection, the court's order specifically directed the magistrate judge to "prepare a report and recommendation." . . . "A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) (citing *Massey*, 7 F.3d at 510). And indeed, consistent with the district court's order, the magistrate judge conducted a hearing and prepared a report and recommendation. The parties were then given the opportunity to file objections. Plaintiffs did so, and their objections were subject to de novo review by the district court judge, in accordance with § 636(b), before final disposition. . . . Despite the order's citation of the wrong subsection, the procedure actually followed by the magistrate judge and district judge was entirely consonant with the law.

*Pharmacy Records v. Nassar*, 465 Fed. App'x 448, 455–56 (6th Cir. 2012).

Plaintiff then filed an ex parte motion for leave to file a reply brief (ECF No. 269), which was denied. (ECF No. 270.) Plaintiff filed a renewed motion for leave to file a reply brief (ECF No. 271), which was granted on June 12, 2015. (ECF No. 275.) After a reply was finally filed (ECF No. 277), a motion for order to show cause was filed by Plaintiff. (ECF No. 273.) The Court ordered a response to the motion (ECF No. 281), but then dismissed the motion. (ECF No. 282).

Meanwhile, both parties appeared for a hearing regarding the original motion for attorney fees and costs. (*See* ECF No. 283). Having not received a failure to file a stipulation of dismissal in a timely manner, the Court issued a notice advising the parties that it intended to dismiss the case in the absence of such a dismissal within one week. (ECF No. 285). A stipulation of dismissal was finally filed on August 14, 2015 (ECF No. 286), and the order was signed three days later. (ECF No. 287).

The Magistrate Judge then issued a thorough and thoughtful Report and Recommendation on August 20, 2015. (ECF No. 288). Plaintiff filed an objection in a timely manner (ECF No. 289); Defendants did not file an objection, but did file a response in opposition to the objection. (ECF No. 291).

## III.    LEGAL FRAMEWORK

After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Contrary to arguments advanced by both parties, a district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Nondispositive "pretrial matter[s]" may be referred to a magistrate judge; thereafter, "[a] judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's *order* is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(B) (emphasis added). A magistrate judge's report and recommendation is not an appealable "order."

While a motion for attorney fees is, by its ordinary meaning, "nondispositive," the governing statute directs courts to treat the referral of such motions as it would "dispositive pretrial matters." *See* Fed. R. Civ. P. 54(D) ("[T]he court may . . . refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.").

The statute provides that "a judge may also designate a magistrate judge . . . to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)," typically, dispositive motions. 28 U.S.C. § 636(b)(1)(B). Then, "the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court"; "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id.* § 636(b)(1)(C).

Finally, "a judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Thus, the Court's standard for review here, as with all reports and recommendations provided under 28 U.S.C. § 636(b), is de novo.

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see also Thomas v. Arn*, 474 U.S. 140, 155 (upholding the Sixth Circuit's practice).

## IV.    ANALYSIS

 The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). While an award of fees and costs is mandatory to a prevailing party, the amount of the award is within the sound discretion of the Court. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The primary concern in evaluating a request for an attorney's fee "is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Id.* (internal quotation marks omitted) (alteration in original). Since the FLSA does not discuss what constitutes a reasonable fee, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court." *Fegley*, 19 F.3d at 1134.

The "lodestar method" of calculation, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see,*

*e.g., Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[5]

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of a fee petition, both with respect to the hourly rates being sought and the time expended working the case:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415 (citing *Reed*, 179 F.3d 471-72, n.3). "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

Thus, the Magistrate Judge appropriately used the "lodestar method" as a starting point in his analysis. The Magistrate Judge found that Plaintiff's lead counsel, with the firm Sommers Schwartz, PC, sought exorbitant rates:

1. Matthew Turner, Senior Shareholder – $515.00;
2. Jason Thompson, Senior Shareholder – $515.00;
3. Lance Young, Senior Shareholder – $515.00;
4. Jesse Young, Shareholder – $300.00;
5. Neil Pioch, Associate – $300.00;[6]
6. Amy Marino, Associate – $250.00; and
7. Veronica Stewart, Paralegal – $135.00.

---

[5] Courts "rely on precedents involving attorney fees without regard to whether they involved Title VII[, for example,] or some other federal statute." *Isabel*, 404 F.3d at 415.

[6] Mr. Pioch joined the Sommers Schwartz firm during the pendency of the litigation. He is listed as an "independent contractor" in the billing records prior to the time he joined the firm. (*See* ECF No. 288 at PageID.4667.)

The Court finds troubling, as the Magistrate Judge noted, that "Plaintiffs' only proffered evidence supporting these rates is found in affidavits from Sommers Schwartz attorneys Matthew Turner and Neil Pioch, as well as an affidavit from paralegal Veronica Stewart." (ECF No. 288 at PageID.4667–68 (internal citations omitted)). Those affidavits "provide nothing . . . to substantiate the reasonableness of the rates they seek; nor do they offer anything to suggest that these rates are in line with market rates in West Michigan for lawyers of similar ability and experience." (*Id.* at PageID.4668). Further, "[e]ach simply makes essentially the same conclusory statement: 'The hourly rates identified in the application reflect the knowledge, training and experience I have in FLSA cases, as well as other litigation matters.'" (*Id.*).

Even more troubling, however, is Plaintiff's sanction-worthy behavior with respect to the amounts that Mr. Turner seeks. The Report and Recommendation states:

> [P]laintiffs' counsel have failed to heed Judge Maloney's previous admonition to substantiate the reasonableness of their hourly rates and their time expenditures. On May 15, 2013, plaintiffs' counsel filed a fee petition seeking approximately $140,000 following the acceptance of offers of judgment by seven of the opt-in plaintiffs. (Dkt. 161). At that time, they sought a blended hourly rate of $349.83 for Mr. Turner, and hourly rates of $295 and $200 for Mr. Jason Young and Mr. Cascante, respectively. (Dkt. 161-1, Page ID 1671, 1676).[7] In an order denying the petition as premature, Judge Maloney noted that the hourly rates "appear to be exorbitant," and that counsel had "fail[ed] to show how their claimed hours . . . were 'reasonably expended' on the recovery of these seven plaintiffs, who recovered via settlement rather than any substantive ruling by this court." (Dkt. 168, Page ID 1765) (emphasis in original). The instant petition shows no improvement, as the supporting affidavits are virtually identical to those submitted with the previous petition; and in some respects, the opposite is true. Counsel now seek significantly higher hourly rates (e.g., $515 for Mr. Turner and $300 for Mr. Cascante). More troubling is that they are seeking the higher rate for Mr. Turner for work he performed throughout the four-year litigation, including the time period covered by the previous petition. (*Compare* Dkt. 264, Page ID

[7] The billing records indicate that Mr. Turner's hourly rate (timekeeper 195) was $300 from July 28, 2011, his first billing entry, until June 12, 2012; the hourly rate jumped to $425 two days later, on June 14, 2012. (Dkt. 161-1, Page ID 1661, 1667).

4213 (seeking an hourly rate of $515 for work Mr. Turner performed in March 2011) *with* Dkt. 161-1, Page ID 1661 (noting an hourly rate of $300 for work Mr. Turner performed in July 2011)).[8] That counsel now seek retroactively higher rates for the same period of time covered by the previous fee petition, after having been admonished by the Court regarding the apparent exorbitance of the earlier rates, is utterly inexplicable.

(ECF No. 288 at PageID.4659–60.) The Court agrees with the Magistrate Judge's assessment, and admonishes Plaintiff's counsel for such an egregious request in light of the Court's prior order. Regardless, the Court will now analyze several objections that Plaintiff has raised.

   A.  *"The Magistrate's Selection of a Single Hourly Rate for All the Attorneys Was Contrary to Law"*

The Report and Recommendation states that because of numerous deficiencies in the affidavits, discrepancies in the hourly rates, requests inconsistent with a prior court order, and the failure to provide "even a job title or function" "on behalf of a number of individuals" in another law firm made it nearly impossible to make a complete "reasonableness assessment." (*See* ECF No. 288 at PageID.4668–69.) The Court need not with detail restate the utter mess of supporting documentation submitted with Plaintiff's motion; the Magistrate Judge, in a methodical manner, documented the numerous issues contained therein, and Plaintiff has not raised serious objections to those deficiencies. Thus, the Court hereby ADOPTS the Magistrate Judge's report with respect to all of the deficiencies identified in Plaintiff's submission. (*See, e.g.,* ECF No. 288 at PageID.4668–69.)[9] With that in mind, the Court now addresses Plaintiff's objection to the Magistrate almost necessarily using a single, blended hourly rate.

---

[8] There are discrepancies in the billing records. For example, Plaintiffs now seeks to recover for 17.7 hours of work Mr. Turner performed from March 23 to June 28, 2011. (ECF No. 264 at PageID.4213). But the May 15, 2013, fee petition billing records show no entry for Mr. Turner prior to July 28, 2011. (ECF No. 161-1 at PageID.1661).
[9] One chief flaw with respect to Plaintiff's objection is that it does not dispute, much less address, any of the underlying deficiencies identified by the Magistrate Judge in Plaintiff's original motion. Rather, Plaintiff consistently makes unsupported assertions that the Report and Recommendation contained "legal errors."

In Plaintiff's section, the only citation for the proposition that the application of a flat rate was improper is to *Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 350 ("[T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.").[10]

As Defendant notes, Plaintiff does not cite to a *single* case for the proposition that the use of a blended rate is contrary to law. Numerous other courts in the Sixth Circuit have used blended rates in fee awards. *See, e.g., Goodman Properties, Inc. v.* Blosser, 2012 WL 6765626, at *1 (E.D. Tenn. Nov. 13, 2012); *Eppard v. ViaQuest, Inc.*, 2010 WL 41568868, at *4 (S.D. Ohio Nov. 2, 2010); *see also Wells v. Corporate Accounts* Receivable, 683 F. Supp. 2d 600, 604 (W.D. Mich. 2010).

The use of a blended rate is particularly appropriate in cases, as here, where Plaintiff's own supporting documentation is wholly inadequate in several respects, and where, as here, an "across-the-board reduction to the fee petition" is appropriate, as opposed to a line-by-line assessment. (*See* ECF No. 288 at PageID.4670.)

The Court also finds that the Magistrate Judge appropriately identified a "mean" hourly rate of $275.00 for plaintiff attorneys who practice in the area of employment law, which is most closely analogous to an FLSA case. The Magistrate Judge used the 2014 edition of the State Bar of Michigan's Economics of Law Practice in Michigan ("Bar Survey"), which includes reported billing rates thoroughout Michigan. This is clearly an acceptable source. *See, e.g., Lamar Advertising Co. v. Charter Twp. of Van Burden*, 178 Fed. App'x 498, 501–02 (6th Cir. 2006).

---

[10] Further, Plaintiff cites to a single case which awarded a $450.00 hourly rate to an attorney. *See Duran v. Sara Lee*, No. 1:11-cv-313, ECF No. 249 at PageID.8314 (W.D. Mich. Mar. 5, 2014). In that case, as the Magistrate Judge noted, "plaintiffs *did not object* to the $475.00 hourly rate sought by defendant's counsel." Nonetheless, the magistrate judge *sua sponte* reduced the rate to $450.00, noting that this rate was within the State Bar of Michigan's 2011 Economics of Law Practice Survey's 95th percentile of attorneys defending employment litigation. This case is clearly an outlier, and Plaintiff's reliance on it is misplaced.

Even if the Plaintiff was correct that the "mean" hourly rate does not adequately capture the mean of the attorneys who worked on this case, the blame lies squarely with the Plaintiff, and not the Court. (*See* ECF No. 288 at PageID.4668 ("Plaintiffs have fallen well short of meeting their burden of proof regarding the rates to be used in calculating the fee award in this case.")).

As the Report and Recommendation notes, while several affidavits recount the education and experience of the respective affiant, even the most complete "affidavits . . . provide nothing . . . to substantiate the reasonableness of the rates they seek; nor do they offer anything to suggest that these rates are in line with market rates in West Michigan for lawyers of similar ability and experience." (*Id.* at PageID.4668.)

Thus, because Plaintiff has fallen short of meeting his burden of proof regarding the rates to be used in calculating the fee award in this case, it leaves the Court with no better option than to apply the median hourly rate across all lawyers who worked on behalf of Plaintiff.[11]

B.  *"The Magistrate's Selection of the Hourly Rate for the Paralegal Was Contrary to Law"*

The Magistrate Judge recommended an hourly rate of $75.00 for work performed by paralegal Veronica Stewart. Plaintiff argues that $135.00 is necessary. The Court finds Plaintiff's argument here without merit. While Plaintiff cites to a single case where the Court adopted hourly rates of $130.00 to $170.00 for paralegals where the opposing party did not object, that case is clearly an outlier.[12] An hourly rate of $75.00 is a reasonable rate in the Western District of Michigan. *See, e.g., Durtsche v. Comm'r*, No. 1:12-cv-1181, 2015 WL 1211183 (W.D. Mich.

---

[11] As Defendants note, Plaintiff has had multiple attempts to get his house in order with respect to fees. (*See* ECF No. 291 at PageID.4846 ("Plaintiffs' Motion and Brief in Support of its Objection to Magistrate Judge Green's Report and Recommendation Regarding Attorney Fees ('Objection') represents Plaintiffs' *fifth* bite at the attorney fees' apple.").

[12] Plaintiff also cites to a few cases in the Eastern District of Michigan, but the Court is not bound by those determinations, nor does that market reflect the same rate.

March 17, 2015); *Mathis v. Comm'r*, No. 1:13-cv-256, 2014 WL 4187368, *3 (W.D. Mich. Aug.

21, 2014); *Mercado v. Comm'r*, No. 1:10-cv-1061, 2013 WL 6512949, *5 (W.D. Mich. Dec. 12,

2013). The Court recognizes that in at least one other recent case, the rate was reduced to

$100.00, but nonetheless finds $75.00 appropriate here. *See Friedrich v. Hunter Warfield, Inc.*,

No. 1:12-cv-460, 2013 WL 4766188, *3 (W.D. Mich. Sept. 4, 2013).[13]

    C.   *"The Magistrate Judge's Decision to Reduce the Number of Hours by 25% Was Improper"*

    After noticing that "[t]he parties add[ed] the number[] [of hours] somewhat differently,

the Magistrate Judge gave the benefit of the doubt to Plaintiff's count of total hours by using

*Defendants'* calculation of Plaintiff's numbers at 1,570.87 plaintiff attorney hours.[14] After a

modest reduction that Plaintiff does not contest, the Magistrate Judge concluded that Plaintiff

sought a total of 1,439.22 attorney hours and 266.8 paralegal hours.

    However, the Magistrate Judge found that "[b]y any measure, [Plaintiff's] numbers

indicate an excessive expenditure of time." (ECF No 288 at PageID.4672.)

    Thereafter, in lengthy discussion, the Magistrate Judge found "fundamental flaws in the

fee petition—unnecessary litigation, excessive hours, overstaffing, and top-heavy structure," not

to mention a lack of supporting documentation, which "make[s] it impractical for the Court to

---

[13] In any event, Plaintiff's argument for $135.00 is clearly excessive.

[14] The fact that Defendants arrive at a *higher* figure than Plaintiff using Plaintiff's figures underscore the fact that "[d]iscrepancies in the billing records make it virtually impossible to determine with complete accuracy the number of attorney hours for which plaintiffs seek reimbursement." (ECF No. 288 at PageID.4671). The Report and Recommendation also states:

> [Plaintiff's] 1,551.40 figure is reached by adding the number of attorney hours enumerated in plaintiffs' brief at the cited pages. This figure is somewhat inflated by the Avanti Group's decision to lump together attorney and non-attorney time. . . . Curiously plaintiffs later state that their "attorneys spent a total of 1,910.10 hours prosecuting this litigation." . . . They cite to nothing in making this statement, and I have been unable to discern how they came to that figure.

(*Id.*).

conduct a line-by-line review." (*See* ECF No. 288 at PageID.4675). Further, "[t]hese problems pervade the fee petition, and they represent fundamental errors in judgment concerning the prosecution of this case. In these circumstances, several circuits have endorsed the complete denial of the petition, particularly where, as here, the amount sought is grossly disproportionate." (*Id.*). *See, e.g., Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607–08 (7th Cir. 1982) (per curiam); *Peter v. Jax*, 187 F.3d 829, 837–38 (8th Cir. 1999); *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 96–97 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 957–58 (1st Cir. 1991) (on reharing).

The Magistrate Judge found that "[w]hile I would not sustain every individualized objection [by Defendants] to the various time entries, were I to approach this fee petition using a line-by-line analysis, *the majority are well taken*." (ECF No. 288 at PageID.4677 (emphasis added)). Thus, the Magistrate Judge appropriately used Defendants' argument for an appropriate fee award based on 758.95 attorney hours as a starting point[15], while also noting that Defendants sought an additional reduction to reflect Plaintiff's limited success. (*See id.* at PageID.4676.) The Magistrate Judge recommended that despite Defendants' objections to an independent contractor's hours for failure to provide any information about the attorney, that attorney was later identified as Neil Pioch by Plaintiff. Thus, 343.3 hours were added back to the 758.95 hours, with a new, appropriate total of 1102.25 hours. (*See id.* at PageID.4677.)

The Magistrate Judge then noted that this figure reflected roughly a 25% reduction from what Plaintiff now admits he seeks. (*See* ECF No. 288 at PageID.4677.) The Magistrate Judge essentially came to the same conclusion using two methods, then: approximately a 25% reduction was appropriate.

---

[15] The Report and Recommendation details how the Magistrate Judge arrived at this figure on behalf of Defendants. (*See* ECF No. 288 at PageID.4676, n.12).

The Magistrate Judge also noted that "[w]hile it would be well within the Court's discretion to deny the fee petition outright, I find that such action would be unduly harsh in this case." (ECF No. 288 at PageID.4675).[16] Further, the Court ultimately agrees that a complete rejection of the petition would be too harsh. However, the Court finds persuasive that a 25% reduction to the hours expended is more than reasonable, particularly where, as here, reductions are plainly appropriate and the fee documentation is voluminous. *See, e.g., Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 Fed. App'x 226, 228 (6th Cir. 2005); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997); *see also, e.g., Loranger v. Stierhem*, 10 F.3d 776, 783 (11th Cir. 1994) (In some cases, an "hour-by-hour review is simply impractical and a waste of judicial resources.").

While Plaintiff submits a "chart" attempting to show that five of the Magistrate Judge's concerns did not warrant a reduction, Plaintiff raises no objection to the broader point of the Magistrate Judge's conclusion: "were I to approach this fee petition using a line-by-line analysis, the majority [of Defendants objections to the entries] are well taken." (ECF No. 288 at PageID.4677).

Defendants likewise note that the objection "ignores the numerous deficiencies in their time entries highlighted in JBS' Response. Plaintiffs' time records contain 2,186 entries, most if not all, of which were improper, vague, unnecessary, entered as block billing, duplicative of other entries, clerical tasks being performed by attorneys, unreasonable, and self-inflicted." (ECF No. 291 at PageID.4850). While the Court does not rubber stamp Defendants' statement, it's clear that Plaintiff did not come close to addressing "all of the Magistrate Judge's concerns"; and "[o]nly those objections that are specific are entitled to a de novo review under the statute. *Mira*

---

[16] Defendants, in their response, urge the Court to do just that, and award no fees. However, the Court finds that because Defendants did not file an objection to the Report and Recommendation, they have waived that argument.

*v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see also Thomas v. Arn*, 474 U.S. 140, 155 (upholding the Sixth Circuit's practice).

> D. *"Assuming Arguendo that the Magistrate's Decision to Reduce the Number of Hours by 25% Was Proper, The Magistrate Improperly Calculated that Reduction Using the Defendants' Proposed Number of Hours."*

As the Court discussed above, 1102 hours was an appropriate total for this litigation. Plaintiff then makes an argument that the Magistrate Judge improperly calculated that reduction from the 1,102.25 figure rather than the 1,439.22 figure. (*See* ECF No. 290 at PageID.4699).

Plaintiff is correct with respect to the big picture, but imprecisely captures the error. As the Court discussed, the Magistrate Judge first noted a (modified version of) Defendants' proposed total of hours as a starting point (758.95), which took into account Defendants' objections, most of which the Magistrate Judge found were valid. The Magistrate Judge, however, appropriately added back Mr. Pioch's independent contractor hours (343.3) after Plaintiff cleared up that discrepancy, and essentially overruled Defendants' objections to regard to those hours. That left the total to a rounded figure of 1102 hours, which the Magistrate Judge ultimately concluded was a "reasonable overall reduction" from what Plaintiff originally sought:

> Defendants' objections, if sustained in total (adding back in the independent contractor hours), would result in a reduction in awardable hours of approximately 25 percent (1439.22/1102.25=76.58%). This is a reasonable reduction, given the facts and circumstances of this case.

(ECF No 288 at PageID.4677).

The Court notes, however, that the Magistrate Judge appears to have added an unwarranted *additional* 25% reduction to the 1102 attorney hour figure, which brought the total down to 827:

> Given that I have determined that an across-the-board reduction is appropriate in this case, I must calculate a rational basis for the reduction. Defendants' objections, if sustained in total (adding back in the independent contractor hours), would result in a reduction in awardable hours of approximately 25 percent (1439.22/1102.25=76.58%). *This is a reasonable reduction, given the facts and circumstances of this case.*
>
> *Accordingly,* I find that the revised total of 1102 attorney hours (rounded) should be *reduced by 25% to remediate the problems outline[d] above. This reduces the total of awardable attorney hours to 827 (rounded).* Likewise, the total number of hours billed by paralegal Veronica Stewart—266.8 hours—should be reduced by 25 percent, to 200 hours (rounded). Applying the revised hourly rates results in a lodestar amount of $242,425.00 (827 x $275.00 and 200 x $75.00).

(*Id.* at PageID.4677–78.) It's clear to the Court that in the conclusion to this section of the Report and Recommendation, an inadvertent additional 25% reduction was applied.[17] Thus, the Court MODIFIES the Report and Recommendation to accurately reflect the "reasonable reduction" in hours to 1102. Accordingly, the Court recalculates the figures, resulting in a corrected lodestar amount of $318,050.00 (1102 x $275.00 and 200 x $75.00).

E.  *"The Magistrate Judge's Decision to Reduce the Lodestar Amount by An Additional 25% in Light of the Limited Success Achieved Was Error"*

Plaintiff finally argues that the Magistrate Judge's recommendation to reduce the lodestar amount by an additional 25% based on Plaintiff's limited success" is improper. Plaintiff only argues that "the Magistrate failed to consider that the reduction of the number of Plaintiffs in the putative class had already been taken into consideration when he reduced the number of hours

---

[17] This was an understandable error given the sheer number of issues that the Magistrate Judge had to handle in a 27-page opinion.

for which the Plaintiffs could recover"; thus, Plaintiff argues, "[t]he law is clear that because the lodestar figure is recognized as including most, if not all, of the *Johnson* factors in determining a reasonable fee, the Courts may not double count these factors by making adjustment up or down based on factors that were subsumed in the lodestar calculation." (ECF No. 288 at PageID.4700.)

The Court will first note that it has wide discretion to reduce the amount of fees based upon a plaintiff's "limited success." *See Hensley*, 461 U.S. at 440 ("Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."); *see also Carlson v. Leprino Foods Co.*, 2010 WL 299490 (reducing the fee award by approximately 40% for limited success on the basis that only 48 of the 84 opt-in FLSA plaintiffs recovered under the collective settlement).

Here, as the Magistrate Judge noted, "eighteen of the opt-in plaintiffs were involuntarily dismissed from the case, including the original named plaintiff, due to claim preclusion." (ECF No. 288 at PageID.4678). Further, "many of the opt-in plaintiffs *failed to participate in discovery*. This ultimately led to the dismissal of 104 opt-in plaintiffs from the case, more than half the original 200. (*Id.*). While a simple formula could be based upon the number of successful plaintiffs in relation to the original number of opt-in plaintiffs (resulting in a 75% reduction), that would not be reasonable. However, it's clear that some additional reduction is warranted for some relative "lack of success"—in addition to the reduction for the number of hours for multiple other issues (mostly resulting from Plaintiff's failure to properly document and provide support for the hours requested).

If the Court has discretion to apply a 50% reduction across-the-board for "limited success," it certainly has the discretion to *apportion* a smaller reduction—a 25% reduction in hours for a multitude of reasons unrelated to "limited success," and a 25% reduction in the total,

appropriate lodestar for reasons related to "limited success." *See, e.g., Snide v. Discount Drug Mart, Inc.*, No. 1:11-cv-244, 2013 WL 6145130 (N.D. Ohio Nov. 21, 2013). Plaintiff's argument that the Court is "double count[ing]" factors is without merit. A 25% reduction in the *accurate* lodestar amount[18], from which the Court was forced to assign a blended hourly rate and correct a multitude of issues relating to hours resulting in a flat-rate reduction, is more than appropriate. The mathematical methods that the Magistrate Judge and the Court utilize to arrive at a reasonable rate are ultimately immaterial in this case. The Court finds that a reduction of $79,512.50 for "limited success" based upon a lodestar of $318,050 is more than appropriate here. Accordingly, the appropriate fee award in this case is $238,537.50.

## V.  CONCLUSION

Accordingly, the Court **MODIFIES** and **ADOPTS** the Magistrate Judge's Report and Recommendation. The Court finds that a total amount of $238,537.50 is reasonable in light of all of the reasons contained in the Magistrate Judge's Report and Recommendation and in this opinion.

---

[18] The Court could have reduced the lodestar amount sought by Plaintiff with a larger percentage in one fell swoop, rather than breaking down its analysis; however, the Court would have come to the same conclusion— approximately a 60% total reduction is warranted from what Plaintiff originally sought due to a variety of factors, including, but not limited to: incomplete documentation, insufficient support for hourly rates, exorbitant hourly rates in excess of what the Court had even previously held was excessive, billing for non-attorney time, and numerous line-by-line deficiencies that made a line-by-line analysis ultimately impossible. Further, the Court notes that in some cases, courts have refused to award fees at all for such systematic deficiencies. Ultimately, Plaintiff carries the burden to show the reasonableness of the fees sought, and the blame for the reduction lies squarely with the Plaintiff. Further, the *total* reduction ($335,996.71) from what Plaintiff originally sought for costs and fees ($615,388.50) only represents a 55% reduction, as the Court approved the vast majority of Plaintiff's costs.

## ORDER

For the reasons contained in this opinion, the Court hereby **MODIFIES AND ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 288). The Court **AWARDS** Plaintiff $238,537.50 in fees and $40,854.29 in costs, for a total of $279,391.79.[19]

**IT IS SO ORDERED**.

Date:   January 14, 2016            /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge

---

[19] Neither party filed objections to the Report and Recommendation relating to costs.